**George GROSS, Plaintiff–Appellant,**

**v.**

**DIEHL SPECIALTIES INTERNATIONAL, INC., Defendant–Respondent.**

No. 54293.

Missouri Court of Appeals, Eastern District. Division Four.

Sept. 7, 1989.

Alan G. Kimbrell, Rosecan & Kimbrell, St. Louis, for plaintiff-appellant.

Stuart Berkowitz, Platke & Berkowitz, St. Louis, for defendant-respondent.

SMITH, Presiding Judge.

Plaintiff appeals from a jury verdict and resultant judgment for defendant in a breach of employment contract case. He also appeals from the granting of a permanent injunction by the court on defendant's counterclaim.

Plaintiff was employed under a fifteen year employment contract originally executed in 1977 between plaintiff and defendant. Defendant, at that time called Dairy Specialties, Inc., was a company in the business of formulating ingredients to produce non-dairy products for use by customers allergic to cow's milk. The owner of the company, Harry Schenberg, had produced such a product but the formulation was unable to withstand pastuerization by the customers to whom it was sold for processing and packaging for retail distribution. Schenberg requested plaintiff's technical assistance in formulating the product, Vitamite, for commercial usage. Plaintiff successfully reformulated the product for that usage.

Thereafter, on August 24, 1977, plaintiff and defendant corporation entered into an employment contract employing plaintiff as general manager of defendant for fifteen years. Compensation was established at $14,400 annually plus cost of living increases. In addition, when 10% of defendant's gross profits exceeded the annual salary, plaintiff would receive an additional amount of compensation equal to the difference between his compensation and 10% of the gross profits for such year. On top of that plaintiff was to receive a royalty for the use of each of his inventions and formulae of 1% of the selling price of all of the products produced by defendant using one or more of plaintiff's inventions or formulae during the term of the agreement. That amount was increased to 2% of the selling price following the term of the agreement. The contract further provided that during the term of the agreement the inventions and formulae would be owned equally by plaintiff and defendant and that following the term of the agreement the ownership would revert to plaintiff. During the term of the agreement defendant had exclusive rights to use of the inventions and formulae and after the term of agreement a non-exclusive right of use.

At the time of the execution of the contract, sales had risen from virtually nothing in 1976 to $750,000 annually from sales of Vitamite and a chocolate flavored product formulated by plaintiff called Chocolite. Schenberg was in declining health and in 1982 desired to sell his company. At that time yearly sales were $7,500,000. Schenberg sold the company to the Diehl family enterprises for 3 million dollars.

Prior to sale Diehl insisted that a new contract between plaintiff and defendant be executed or Diehl would substantially reduce the amount to be paid for defendant. A new contract was executed August 24, 1982. It reduced the expressed term of the contract to 10 years, which provided the same expiration date as the prior contract. It maintained the same base salary of $14,400 effective September 1982, thereby eliminating any cost of living increases incurred since the original contract. The 10% of gross profit provision remained the same. The new contract provided that plaintiff's inventions and formula were exclusively owned by defendant during the term of the contract and after its termination. The 1% royalty during the term of the agreement remained the same, but no royalties were provided for after the term of the agreement. No other changes were made in the agreement. Plaintiff received no compensation for executing the new contract. He was not a party to the sale of the company by Schenberg and received nothing tangible from that sale.

After the sale plaintiff was given the title and responsibilities of president of defendant with additional duties but no additional compensation. In 1983 and 1984 the

business of the company declined severely and in October 1984, plaintiff's employment with defendant was terminated by defendant. This suit followed.

Plaintiff's action was in four counts. The first sought damages for breach of contract arising from an unlawful termination of plaintiff. That count was tried to the jury on the issue of whether defendant had "cause" to terminate plaintiff under the employment agreement. The jury found for defendant. Plaintiff raises three evidentiary issues relating to that count but does not challenge the jury verdict. Count II sought a declaratory judgment as to the ownership and right of use of plaintiff's formulations. Count III sought an accounting and money judgment based upon the use of plaintiff's formulations by defendant after plaintiff's termination. Those counts were resolved by the trial court's holding that the operative contract at the time of termination was the 1982 agreement, and pursuant thereto defendant was the owner of the formulae at the time of termination.

Count IV dealt with monies owed to plaintiff at the time of termination. The evidence, and the admissions by defendant's witnesses on the stand, established that defendant did indeed owe plaintiff a substantial amount of money on termination which has never been paid. Defendant asserted some relatively minor offsets to that amount, some of which plaintiff acknowledged and some of which he denied. In any event it is clear from the testimony that defendant owed plaintiff something. The trial court sustained plaintiff's motion for directed verdict on this count and Count IV was not submitted to the jury. Unfortunately the record, the court, and the parties were not clear whether the directed verdict applied to liability only or liability and damages. In the judgment rendered after the jury verdict no reference was made to Count IV and the judgment decreed simply that plaintiff "take nothing by reason of this cause of action." The matter of the absence of an award to plaintiff on Count IV was raised in plaintiff's motion for new trial. Defendant acknowledged that the court had di-rected a verdict for plaintiff on "liability only" and contended that the jury had ruled against plaintiff on the issue of damages. The court refused to amend the judgment and denied plaintiff's motion for new trial.

Defendant counterclaimed for an injunction to prevent plaintiff from using the formulations he had originated. Based upon the trial court's holding that the 1982 agreement was the operative contract, the injunction was ordered by the trial court.

■ We turn first to plaintiff's three trial or evidentiary points of error. The first concerns the trial court's restriction of cross-examination of one of defendant's witnesses. The witness testified early in the defendant's case on a broad range of matters. She was fully cross-examined at that time. Her direct testimony was, however, restricted by an *in limine* ruling of the trial court that she would not be allowed to testify concerning plaintiff's treatment of employees of defendant while he was president of that company. Later in the case defendant brought to the attention of the trial court that the restricted testimony included testimony that plaintiff ordered two employees not to honor subpoenas to testify in a worker's compensation hearing involving a claim by a former worker against defendant. The court changed its ruling on the *in limine* motion and authorized the recall of the witness to testify in that limited area. Plaintiff then sought to cross-examine the witness on matters unrelated to her recall testimony and which could have been and in some cases were, covered on her original cross-examination. The trial court refused to allow such cross-examination. We find no error.

The extent of cross-examination rests largely in the discretion of the trial court and we will not interfere with that discretion unless abused. *State v. Dunn,* 577 S.W.2d 649 (Mo. banc 1979) [3, 4]. The matters upon which plaintiff sought to cross-examine the witness were in evidence when the witness first testified. Cross-examination could have been, and to an ex-

tent was, conducted on those matters initially. The cross-examination sought was repetitive and untimely and we find no abuse of discretion in the trial court's restriction thereon.

■ Plaintiff also alleges error in the trial court allowing the testimony by the witness and a fellow employee concerning plaintiff's instruction to them to ignore the subpoenas. The issue before the jury was whether the plaintiff had performed his duties under the contract. Those duties included the general operation of the company and the supervision of employees. We have no doubt that this evidence of an employer's instructions to employees to disobey the law on a matter of company business is relevant to the issue before the jury. We find no error.

■ Plaintiff's third claimed trial error is in the refusal of the trial court to grant a continuance to allow plaintiff to take the deposition of an individual in another state. During the testimony of defendant's current president, the witness testified to a telephone conversation he had with an officer of a potential customer of defendant. The thrust of the conversation was that the officer of the customer had been told by plaintiff immediately prior to his termination that if the customer did business with defendant certain trade secrets of the customer might be acquired by competitors. Plaintiff sought to continue the case in order to take the deposition of the customer's officer to refute that the conversation had taken place.

We do not question that the testimony was prejudicial to the plaintiff. The wound, however, was self-inflicted. The testimony of defendant's president was offered to prove the truth of a statement made by the customer's officer, not present for cross-examination, of the content of a conversation the customer's officer had with plaintiff. The testimony was therefore pure hearsay. *State ex rel. State Highway Commission of Missouri v. Kimmell*, 435 S.W.2d 354 (Mo.1968) [1–5]. But no objection was made by the plaintiff at any time to the testimony. The question which elicited the testimony was "and what

did he tell you?" The answer began "Mr. White told me that Mr. Gross had called him on the 9th ... and told Mr. White...." The question and initial part of the answer clearly identified that what was coming was hearsay. Presumably an objection would have been sustained and the prejudicial testimony would never have been before the jury. We are unable to find an abuse of discretion in the trial court refusing a continuance to allow plaintiff to counteract testimony which he could have, but did not, prevent from being admitted in the first place. We find no error affecting the judgment on Count I.

■ We turn now to the court's holding that the 1982 agreement was the operative contract. Plaintiff contends this holding is erroneous because there existed no consideration for the 1982 agreement. We agree. A modification of a contract constitutes the making of a new contract and such new contract must be supported by consideration. *Barr v. Snyder*, 294 S.W.2d 4 (Mo.1956) [6, 7]. Where a contract has not been fully performed at the time of the new agreement, the substitution of a new provision, resulting in a modification of the obligations on *both* sides, for a provision in the old contract still unperformed is sufficient consideration for the new contract. *Id.* [8]. While consideration may consist of either a detriment to the promisee or a benefit to the promisor, a promise to carry out an already existing contractual duty does not constitute consideration. *W.E. Koehler Construction Co., Inc. v. Medical Center of Blue Springs*, 670 S.W.2d 558 (Mo.App.1984) [3, 4].

■ Under the 1982 contract defendant assumed no detriment it did not already have. The term of the contract expired on the same date under both contracts. Defendant undertook no greater obligations than it already had. Plaintiff on the other hand received less than he had under the original contract. His base pay was reduced back to its amount in 1977 despite the provision in the 1977 contract for cost of living adjustments. He lost his equal ownership in his formulae during the term of the agreement and his exclusive ownership after the termination of the agree-

ment. He lost all royalties after termination of the agreement and the right to use and license the formulae subject to defendant's right to non-exclusive use upon payment of royalties. In exchange for nothing, defendant acquired exclusive ownership of the formulae during and after the agreement, eliminated royalties after the agreement terminated, turned its non-exclusive use after termination into exclusive use and control, and achieved a reduction in plaintiff's base salary. Defendant did no more than promise to carry out an already existing contractual duty. There was no consideration for the 1982 agreement.

Defendant asserts that consideration flowed to plaintiff because the purchase of defendant by the Diehls might not have occurred without the agreement and the purchase provided plaintiff with continued employment and a financially viable employer. There is no evidence to support this contention. Plaintiff had continued employment with the same employer under the 1977 agreement. Nothing in the 1982 agreement provided for any additional financial protection to plaintiff. The essence of defendant's position is that Schenberg received more from his sale of the company because of the new agreement than he would have without it. We have difficulty converting Schenberg's windfall into a benefit to plaintiff.

The trial court erred in holding that the 1982 contract was the operative contract. The only basis for the injunction was that erroneous holding. Under the 1977 contract plaintiff became the exclusive owner of the formulae upon the termination of the contract and obviously could not be enjoined from using what he owned. That erroneous ruling also requires us to reverse the judgment on Count II and Count III and remand for further proceedings to determine the formulae for which plaintiff is entitled to royalties from defendant and the amount thereof.

We must also remand Count IV. By the court's directed verdict and defendant's own admission, plaintiff was entitled to the compensation earned under his agreement prior to his termination. There was only a slight dispute as to the amount of that compensation, and at one point de-

fendant's counsel acknowledged the amount plaintiff asserted was due. Defendant subsequently backed off that admission. The issue was never submitted to the jury, largely perhaps because of the confusion in the scope of the trial court's granting of the directed verdict. The only verdict-directing instruction involved Count I and hypothesized plaintiff's recovery upon his having substantially performed the agreement and defendant having failed to perform. The converse instruction required a verdict for the defendant unless the jury believed "plaintiff substantially performed as provided in the agreement." As instructed the jury could not award plaintiff any damages for pre-termination compensation unless it found he did not breach the contract. The jury confronted with these instructions sent a note to the court inquiring: "May we find for the defendant, but allow an amount (representing what the plaintiff should receive through Oct.1984) be paid to the plaintiff." The response was "the jury will be guided by the evidence and instructions as given." That response compelled the jury verdict as returned which made no award for Count IV. In that posture defendant's contention that the note reflects the jury considered the issue of pre-termination compensation and found against plaintiff is strained at best. It may be acknowledged that an instruction on Count IV should have been submitted by plaintiff. But the confusion of the conference between counsel and the court may very well have lead plaintiff to believe that an instruction was unnecessary as the court had already granted the judgment requested. We therefore remand for further proceedings on damages to be awarded under Count IV.

Judgment on Count I affirmed. Judgment on defendant's counterclaim reversed. Judgment on Counts II, III and IV reversed and remanded for further proceedings in accordance with this opinion.

STEPHAN and SATZ, JJ., concur.