**MEDICARE–GLASER CORPORATION, Plaintiff,**

v.

**GUARDIAN PHOTO, INC., Defendant.**

**No. 88–1177 C(3).**

United States District Court, E.D. Missouri, E.D.

March 29, 1990.

---

Richard Greenberg and Richard S. Bender, Rosenblum, Goldenhersh Silverstein and Zafft, P.C., Clayton, Mo., for plaintiff.

Charles Seigel, III and Jason Rugo, Gallop, Johnson & Neuman, St. Louis, Mo., for defendant.

## MEMORANDUM

HUNGATE, District Judge.

This matter is before the Court to determine the merits of the parties' claims after a two-day trial before the Court (the Honorable George F. Gunn, Jr., presiding) sitting without a jury.

Each party alleges the other party is liable for breach of contract (Count I of plaintiff's complaint; Counts I–III of defendant's counterclaim), and for fraud (Counts II and III of plaintiff's complaint; Count IV of defendant's counterclaim). The parties' relationship began in May 1985 when they agreed that defendant would provide plaintiff with photofinishing services for at least two years. Plaintiff's breach of contract claim seeks the recovery of $175,000 allegedly due from defendant to induce plaintiff to switch from its then existing photofinisher to defendant. Plaintiff characterizes this outstanding amount as the amount defendant agreed to pay to obtain plaintiff's photofinishing business, regardless of the volume of that business. Defendant characterizes that amount as due only upon plaintiff reaching a certain volume of photofinishing sales, a level plaintiff never attained during the parties' relationship. Alternatively, defendant asserts the amount is not due because (a) the parties subsequently modified their agreement; or (b) through its conduct, plaintiff waived or is estopped from seeking the

disputed payment. By its breach of contract claim, which for the Court's present purposes encompasses defendant's quantum meruit and open account claims, defendant seeks recovery of $59,460 the parties agree plaintiff owes for unpaid photofinishing services provided by defendant. Each party additionally claims the other is liable in fraud for representations made during the discussions leading to the parties' agreement. Plaintiff also asserts defendant is liable in fraud for misrepresenting an amount actually charged by defendant later in the parties' relationship.

After the trial concluded and before an opinion was rendered, Judge Gunn recused himself because his son-in-law had become a partner in the law firm representing defendant. Although both parties have not executed a consent to this Judge's entry of judgment without a retrial, plaintiff does not object thereto. The undersigned determines, upon a review of the record, that no credibility determinations are required. Accordingly, this Court considers the trial transcript "as akin to 'supporting affidavits' for summary judgment" purposes and determines it may render an opinion without another trial before this Judge. *Emerson Electric Co. v. General Electric Co.*, 846 F.2d 1324, 1325–26 (11th Cir.1988) (per curiam).

Having considered the trial transcript, the exhibits, the parties' stipulation, and the relevant materials filed of record, the Court makes and enters the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff Medicare–Glaser Corporation ("Medicare") is a citizen of Missouri, engaged in the business of operating retail pharmacies and drug stores which offer customers photograph developing and finishing services, among other products and services.

2. Defendant Guardian Photo, Inc. ("Guardian") is a citizen of Pennsylvania and Michigan, engaged in the business of providing photograph developing and finishing services for retail businesses, such as plaintiff, among others.

3. During the relevant time period (from about March 1985 to June 1988), Ray Jeans was plaintiff's vice-president and director of sales promotions; William F. Gabler was a sales representative and then plant manager for defendant in San Antonio, Texas; Bob Gregory was the manager for defendant's western region; and Ron Schapp was the manager of defendant's Harvey, Illinois, plant. Between July 1, 1984, and August 1, 1987, Jim Roberts was the district sales manager for defendant in the St. Louis, Missouri, area. These individuals were the witnesses during trial and were the persons most intimately involved in the transactions at issue here.

4. Before May 28, 1985, Medicare had an agreement with Colorcraft Corporation ("Colorcraft") through which Colorcraft developed the film of and provided other photofinishing services for plaintiff and plaintiff's customers. In May 1985, during the period of negotiations between plaintiff and defendant, Colorcraft made an offer to plaintiff so that plaintiff would continue to use Colorcraft's photofinishing services. In relevant part Colorcraft offered to maintain from June 1, 1985, through May 31, 1987 the prices it charged plaintiff; to make available to plaintiff an "additional allowance of $60,000 to be used strictly to promote photofinishing for [plaintiff's] stores" between June 1, 1985, to May 31, 1986; and to make available to plaintiff "an additional amount of $60,000 from June 1, 1986, through May 31, 1987 ... provided that [plaintiff] has a net photofinishing sales increase to Colorcraft between June 1, 1985, and May 31, 1986, of 30 percent." Plaintiff did not accept this offer and terminated the relationship with Colorcraft upon accepting defendant's offer to provide photofinishing business to plaintiff.

5. In the spring of 1985, defendant decided to try to enter the St. Louis, Missouri, area photofinishing market by approaching plaintiff for its photofinishing business. In an effort to obtain plaintiff's business, Bill Gabler, Jim Roberts, and Bob Gregory had several discussions with Ray Jeans. Plaintiff rejected defendant's initial offer(s) to provide photofinishing services in exchange

for, in part, a six percent advertising accrual payment (which would be six percent of the total wholesale price plaintiff paid defendant for defendant's services) and a $50,000 cash payment. During these negotiations, defendant knew that Colorcraft was competing for plaintiff's photofinishing business.

6. Finally, during a meeting on May 28, 1985, in St. Louis, Missouri, Mr. Gregory offered and Mr. Jeans accepted defendant's payment of $100,000 for the first year and $125,000 for the second year of the parties' relationship, plus the six percent advertising accrual payment in order to have plaintiff use defendant's photofinishing services for two years. This agreement was reduced to writing in a document dated May 28, 1985, that was signed by Mr. Jeans and Mr. Roberts and reviewed by Mr. Gregory prior to execution. The written agreement states in full:

> Guardian Photo agrees to furnish Medicare–Glaser Corporation with an advertising allowance of $100,000.00 during the first year of business payable by check in monthly payments of $8,350.00 each. The second year Guardian Photo will furnish $125,000.00 for advertising. This money will be in addition to a 6% advertising accrual payable quarterly by check.
>
> If Medicare–Glaser Corporation would like, Guardian Photo could advance up to $50,000.00 immediately and the remaining balance for the first year would be paid in monthly amounts of $8,350.00 each.

7. Defendant paid plaintiff the $50,000 payment in May 1985 or June 1985. The parties do not challenge this payment. The parties also do not dispute how plaintiff spent any of the money received from defendant.

8. Prior to entering into this agreement, Mr. Jeans had reported to defendant's representatives that plaintiff was doing approximately $500,000–$700,000 annually in photofinishing sales. Defendant's representatives relied on annual sales by plaintiff of at least one million dollars in photofinishing services. This figure was based

either on the parties' discussions regarding potential sales that might be possible with sufficient effort, or estimates of defendant's representatives about plaintiff's existing St. Louis, Missouri, market along with the available Springfield, Missouri, market.

9. In the fall of 1985 defendant received materials reflecting the actual volume of plaintiff's photofinishing sales during plaintiff's relationship with Colorcraft. That volume was lower than defendant expected.

10. In December 1985, the first of defendant's $8,350 monthly payments was due. (The first six months' payments had been satisfied through the $50,000 payment made by defendant in the summer of 1985.) Defendant did not make that payment or any subsequent payments toward the supplemental allowance balance allegedly due pursuant to the parties' May 28, 1985, written agreement.

11. The supplemental allowance was not paid in full because defendant's representatives determined that plaintiff's sales volume did not warrant the disputed payments. Mr. Jeans made repeated oral requests for the outstanding supplemental allowance. It is not clear when the last of these requests was made.

12. In February 1986, the parties' representatives met. Defendant's representatives advised Mr. Jeans that the six percent allowance would be paid on a monthly (rather than on a quarterly) basis, and no further payments toward the supplemental allowance would be paid until plaintiff's photofinishing sales reached a specified higher level.

13. In May 1986, defendant (a) increased by seven percent the six percent advertising accrual paid to plaintiff, and (b) increased by seven percent the charges plaintiff's stores paid for defendant's services. There was no benefit to either party as a result of this increase. The practical effect of this increase was that each month plaintiff's stores were sending an additional total amount approximating the amount defendant owed plaintiff as the supplemental allowance. Defendant then paid this

additional total to plaintiff. Thus, plaintiff was in essence paying itself the monthly amount due toward the supplemental allowance, while simultaneously giving an appearance that defendant was making the payments. This arrangement remained in effect until the parties' relationship ended.

14. At one point in their relationship the parties ascertained that defendant had not calculated properly the amounts to be paid under this new arrangement. After some discussion, the parties corrected the problem.

15. In July 1986, the parties' representatives met again to discuss various aspects of their relationship. In relevant part, the parties agreed that defendant would stop providing photofinishing services to those of plaintiff's stores having an extremely low volume of sales. In consideration of that agreement and the resulting reduction in defendant's costs, defendant agreed to increase plaintiff's accrual allowance by two percent, with no similar increase in charges to plaintiff for defendant's services to the other stores.

16. In May or June 1988, Ray Jeans' superiors learned that the outstanding $175,000 balance on the supplemental allowance had not been paid by defendant. Plaintiff promptly terminated the relationship between the parties, and demoted and transferred Mr. Jeans. This lawsuit was filed shortly thereafter.

17. During the term of the parties' relationship, plaintiff never made a written demand of defendant for payment of the $175,000 and never expressly advised defendant that the relationship would terminate if the outstanding balance was not paid. Additionally, during the course of the parties' relationship, plaintiff never expressly stated to defendant that plaintiff was releasing its right to the supplemental allowance due under the parties' original agreement.

18. During the parties' relationship, plaintiff's volume of photofinishing sales never reached the level desired by defendant. Defendant would not have maintained the relationship if plaintiff had unconditionally demanded payment of the $175,000 amount.

19. The parties stipulated that at the time the parties' relationship terminated, plaintiff owed defendant $59,460 for photograph developing and finishing services. That amount remains unpaid.

*Conclusions of Law*

A. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds the required amount,[1] exclusive of interest and costs. Venue in this district is proper pursuant to 28 U.S.C. § 1391(a).

B. On or about May 28, 1985, the parties entered into a valid and binding contract pursuant to which, in relevant part, Medicare agreed to provide Guardian with Medicare's photofinishing business for at least two years in return for the payment of certain advertising allowances. Guardian agreed to pay to Medicare an "accrual allowance" of six percent of plaintiff's sales volume. In addition, Guardian agreed to pay Medicare a "supplemental allowance" of $100,000 in the first year and $125,000 in the second year in monthly installments of $8,350, unless Medicare requested an advance payment of $50,000.

C. This contract was not fully performed and was violated by defendant through defendant's failure to pay the supplemental allowance in full.

D. Payment of the supplemental allowance was not conditioned on Medicare's photofinishing sales volume reaching a certain level such as $1 million. No such

---

**1.** $10,000 was the total amount in controversy required to satisfy this Court's diversity jurisdiction at the time this lawsuit was filed on June 20, 1988. This amount was subsequently increased to $50,000 by the Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, § 201, 102 Stat. 4642, 4646 (1988).

The higher jurisdictional amount applies to diversity cases commenced on the 180th day after November 19, 1988, the date the Act was enacted. *Id.* This case is properly before this Court regardless of which total amount of controversy requirement applies because the disputed amount exceeds $50,000.

condition was set forth in the parties' written agreement pertaining to the supplemental allowance. As is evident from the language of Colorcraft's proposal, it would have been relatively simple to set forth such a condition. Nor was such a condition clearly discussed by the parties during the meeting that led to the execution of the parties' written agreement about that allowance. The person who had expressly made the offer of the $100,000 and $125,-000 payments reviewed the written document prior to its execution and did not take action to revise that document. Furthermore, it is not clear that any such condition was a subject matter of earlier discussions.

The absence of such a condition is also evident from defendant's conduct after execution of that agreement. Defendant's subsequent efforts to alter the terms of the supplemental allowance provision would not have been necessary if defendant's position is true. This is so because plaintiff never attained the desired photofinishing sales level. Thus, no supplemental payment was ever due under defendant's interpretation.

Finally, if defendant's position is accurate, then none of the payment (for instance, the undisputed advance payment of $50,000 defendant made in the summer of 1985) would have been due until the sales volume reached the desired level, a level never attained by plaintiff.

■ E. Defendant's argument that, regardless of the terms of the parties' original agreement, the parties amended or modified the agreement in February 1986, is not persuasive.

Parties are ... free to modify a contract after making it.... The agreement to modify must itself possess all the elements necessary to form a contract, including the element of consideration.... Such consideration is not present when one party merely agrees to do that which it was already legally liable to do for a greater consideration, nor is it present when one party agrees to do less than it is already obligated to do for the same or greater consideration. *R–*

*Way Furniture [Co]. v. Powers Interiors, Inc.,* 456 S.W.2d 632, 637 (Mo.App. 1970). While an agreement made in substitution of a prior executory contract annuls the former contract and is itself a sufficient consideration for release from its obligations, the substituted agreement must contain a change of the obligation of each party in order to constitute a consideration. *Barr v. Snyder,* [294 S.W.2d 4] (Mo.1956) [.] *Twin River Constr. Co. v. Public Water Dist. No. 6,* 653 S.W.2d 682, 690 (Mo.App. 1983) (citations omitted); *accord Gross v. Diehl Specialties Int'l, Inc.,* 776 S.W.2d 879, 883 (Mo.App.1989).

Defendant urges consideration for the February 1986 suspension of further payments toward the supplemental allowance was defendant's agreement to pay the six percent accrual allowance on a monthly basis, rather than on a quarterly basis. This February 1986 arrangement, however, has no consideration. Defendant was already legally liable for the six percent payment. Defendant undertook no obligations greater than those it already had in February 1986. Indeed, defendant was merely agreeing to do less than it was obligated to do for consideration at the same or greater level. "Plaintiff on the other hand received less than what [it] had under the original [agreement]." *Gross,* 776 S.W.2d at 883. Thus, the February 1986 arrangement did not modify the parties' earlier agreement.

Defendant does not now clearly assert that (a) the seven percent "increase" put into effect as of May 1986, or (b) the two percent increase in the advertising accrual that took effect as of July 1986, were modifications pertinent to the supplemental allowance payment. Thus, the Court will not further address those "adjustments" in the parties' relationship as modifications of the original agreement.

■ F. Defendant's waiver and estoppel arguments are also not persuasive enough to bar plaintiff's breach of contract claim. In *Brown v. State Farm Mut. Auto. Ins. Co.,* 776 S.W.2d 384 (Mo.1989) (en banc), the Missouri Supreme Court recently held that estoppel requires:

(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act.

*Id.* at 386. Since, in this case, defendant is asserting plaintiff is estopped from pursuing its claim, defendant bears the burden of establishing by "clear and satisfactory evidence every fact essential to create an estoppel." *Smith v. American Bank & Trust Co.,* 639 S.W.2d 169, 174 (Mo.App. 1982). "Waiver is founded upon 'the intentional relinquishment of a known right.' If waiver is 'implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right.' *Shapiro v. Shapiro,* 701 S.W.2d 205, 206 (Mo.App. 1985)." *Brown,* 776 S.W.2d at 386–87. The present record does not clearly evince the presence of estoppel or waiver so as to bar plaintiff's breach of contract claim.

Defendant argues plaintiff is estopped from seeking or has waived its claim to the $175,000 because plaintiff continued in the relationship for two and one-half years after the parties' February 1986 meeting. While under other circumstances such a delay might warrant the application of estoppel or waiver principles to bar plaintiff's claim, this is not such a case. In particular, this Court is mindful of the parties' May 1986 arrangement for the seven percent increase in the cost of defendant's services and the accrual payment made to plaintiff. There is no plausible explanation of record for this simultaneous increase other than to conceal the nonpayment of the supplemental allowance after this increase. The monthly accrual payment approximated the amount due as the monthly supplemental allowance payment. Both parties, not just plaintiff, engaged in this arrangement which was initiated shortly after the parties' February 1986 meeting. The existence of this arrangement adequately explains plaintiff's delay in more forcefully asserting its right to the $175,000 supplemental allowance due under the parties' original agreement. In fact, the record reflects that once others above Mr. Jeans discovered the nonpayment, plaintiff took prompt action (e.g., through transferring Mr. Jeans, terminating the parties' relationship, and instigating this lawsuit). Thus, this Court is not persuaded that defendant acted simply on "the faith of" plaintiff's delay in vigorously pursuing its claim to the balance due on the supplemental allowance, or that plaintiff intended to relinquish voluntarily its right to the $175,000.

G. In Count II of plaintiff's complaint, plaintiff seeks relief for defendant's allegedly false representations that it would pay the accrual payment and the supplemental allowance. In Count III, plaintiff seeks relief for defendant's allegedly false representations regarding the May 1986 seven percent increase in the cost for defendant's services. In Count IV of its counterclaim, defendant seeks relief for plaintiff's allegedly false representations regarding the volume of its photofinishing sales made at the time the parties entered into their original agreement.

The elements of a fraudulent misrepresentation case are:

(1) a false, material representation;

(2) the speaker's knowledge of its falsity or his ignorance of its truth;

(3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated;

(4) the hearer's ignorance of the falsity of the statement;

(5) the hearer's reliance on its truth, and the right to rely thereon; and

(6) proximate injury.

*Huttegger v. Davis,* 599 S.W.2d 506, 511 (Mo.1980) (en banc). The party claiming fraud has the burden to establish each element and failure as to any one element is fatal to the entire claim. *Craft v. Metromedia, Inc.,* 766 F.2d 1205, 1218 (8th Cir.1985) (construing Missouri law), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). For a false misrepresentation of an intention to perform to be actionable, the party seeking relief must demonstrate not only that an assurance

was not fulfilled, but that at the time the representation was made there was no intention to fulfill the assurance. *Dillard v. Earnhart*, 457 S.W.2d 666, 670 (Mo.1970). "It is not enough if for any reason ... the speaker changes his mind and fails or refuses to carry his expressed intention into effect." *Craft*, 766 F.2d at 1218, citing *Dillard*, 457 S.W.2d at 670. A party's case for fraud "will fail if he can show ... facts and circumstances which are equally consistent with honesty and good faith." *Id.* Upon consideration of these principles and the record, the Court finds in favor of defendant on Counts II and III of plaintiff's complaint, and in favor of plaintiff of Count IV of defendant's counterclaim.

As to the plaintiff's fraud claims regarding the accrual payments, plaintiff has not satisfactorily shown that those payments were not made. Although those payments may have been made in an untimely or inaccurate manner, the parties worked out the problems with those payments. Additionally, there is no showing that any such problems were a result of fraud.

■ As to plaintiff's fraud claim regarding the supplemental allowance, the record lacks evidence that, at the time defendant entered into the parties' original agreement, defendant did not intend to pay the supplemental allowance. In fact, the record intimates defendant did intend to comply with that agreement since defendant made the first lump sum payment to plaintiff of $50,000.

■ With respect to defendant's fraud claim, the record does not establish that Mr. Jeans made any statement that plaintiff's present or past sales of photo developing services exceeded $700,000. While discussions or estimates of potential sales may have exceeded the figures given by Mr. Jeans, such statements are not actionable. *See id.* at 1216 ("a statement of opinion or value is not an actionable representation of fact because it relates to terms of degree capable of different interpretations").

H. The parties have agreed that plaintiff owes defendant $59,460 for photofinishing services. Due to this agreement, the Court will not further consider Counts I–III of defendant's counterclaim.

I. Under the circumstances, the record does not warrant the assessment of punitive damages in favor of plaintiff and against defendant. Accordingly, the Court will not assess punitive damages as requested by plaintiff.

J. In light of the foregoing, the Court will (1) enter judgment in favor of plaintiff and against defendant on Count I of plaintiff's complaint in the total amount of $175,000, with prejudgment interest at the rate of nine percent per year accrued since June 1, 1986, on $50,000 of that amount, and since June 1, 1987, on $125,000 of that amount; and (2) enter judgment in favor of defendant and against plaintiff on Counts I–III of defendant's counterclaim in the total amount of $59,460, with prejudgment interest at the rate of nine percent per year accrued since June 9, 1988. Thus, the Court will enter judgment in favor of plaintiff in the total amount of $224,442.34 ($50,-000.00 plus $17,605.28 in prejudgment interest thereon since June 1, 1986; plus $125,000.00 plus $31,837.06 prejudgment interest thereon since June 1, 1987); and in favor of defendant in the total amount of $63,770.04 ($59,460.00 plus $4,310.04 in prejudgment interest thereon since June 9, 1988).

K. Having determined the merits of the parties' claims, any pending motions are denied as moot.

### JUDGMENT

A memorandum dated this day is hereby incorporated into and made a part of this judgment.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that on the cause of action set forth in Count I of plaintiff's complaint, plaintiff Medicare-Glaser Corporation recover of defendant Guardian Photo, Inc., a total of $224,442.34 ($175,000.00 in principal plus $49,442.34 in prejudgment interest), plus post-judgment interest at the legal rate.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that plain-

tiff Medicare–Glaser Corporation recover nothing on the causes of action set forth in Counts II and III of plaintiff's complaint, and that the same be dismissed with prejudice.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that on the causes of action set forth in Counts I–III of defendant's counterclaim, defendant Guardian Photo, Inc., recover of plaintiff Medicare–Glaser Corporation $63,770.04 ($59,460.00 in principal plus $4,310.04 in prejudgment interest), plus post-judgment interest at the legal rate.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that defendant Guardian Photo, Inc., recover nothing on the cause of action set forth in Count IV of defendant's counterclaim, and that the same be dismissed with prejudice.

Each party shall bear its own costs.