Peter HUESEMAN, Plaintiff–Appellant,

v.

MEDICINE SHOPPE INTERNATIONAL, INC., Defendant–Respondent.

No. 61208.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 5, 1993.

James J. Sauter, Mary Elizabeth Dorsey, Deeba, Sauter & Herd, St. Louis, for plaintiff-appellant.

Stephen H. Rovak, Catherine Hope Craig, Peper, Martin, Jensen, Maichel and Hetlage, St. Louis, for defendant-respondent.

SMITH, Judge.

Plaintiff appeals from the order of the trial court sustaining defendant's motion for directed verdict at the close of the plaintiff's case in this action based upon a two count petition alleging breach of contract and fraud. We affirm.

Plaintiff and Don Ellis were the owners of D & P corporation which in 1982 entered into a license agreement with the defendant for a Medicine Shoppe franchise on Manchester Road in Rock Hill. Plaintiff

and Ellis each owned fifty percent of the stock of D & P. D & P subsequently acquired an additional Medicine Shoppe franchise for a pharmacy on Hampton Ave. The Manchester Road franchise agreement provided that defendant could terminate the agreement and continue the operation on its own behalf or assign its rights thereto upon certain conditions. Those conditions included, among others, breach of the franchise agreement and suspension or termination of a pharmacist's license of any employee. Current payment of the franchise licensing fees to defendant was a term of the contract and arrearage of those fees was a breach of the agreement. Upon termination the licensee was required to effect a complete and effective transfer of the business to defendant or its designate. Both plaintiff and Ellis executed the franchise licensing agreement in their corporate and individual capacities and individually agreed to perform the obligations of the licensing agreement.

Operations at the Manchester store were handled by Ellis and plaintiff handled the operations at the Hampton store. In 1985, plaintiff was arrested for filling false prescriptions to himself for a controlled substance. He pleaded guilty to federal and state charges, surrendered his pharmacy license, was placed on five years probation and given six months work release. He subsequently applied for a new license and he was relicensed in 1991. Following his arrest, D & P, with the assistance of defendant, sold the Hampton operation to a third party. The proceeds of that sale were not sufficient to satisfy the purchase money loan from defendant which D & P remained indebted for. In 1986 Ellis suffered a heart attack and was away from work for two or three months. Thereafter he and D & P sought to sell the Manchester store to a third party. In this they had the cooperation of defendant. The attempts were unsuccessful and in early July of 1987 Ellis advised defendant that he would close the store on July 31 if no buyer had been obtained prior thereto. At that time franchise license fees were in arrears. Because closure of a store damages the corporate image and the franchise, defendant elected to acquire the store under the licensing agreement and operate it until a buyer could be found.

Plaintiff and Ellis executed a limited power of attorney authorizing defendant to continue the operation of the pharmacy pending termination of the franchise. Plaintiff also executed, in both his individual and corporate capacities, a document entitled "termination and assent" to the termination of the franchise agreement. Ellis thereafter executed the same document. Included in the document were recitals that the termination was due to the arrearage in franchise license fees and because of the revocation of plaintiff's pharmacist license. It also contained provisions for the nondisclosure of the document, for waiver of the licensing agreement non-competition provision as to both Ellis and plaintiff, and a hold harmless provision in favor of Ellis and plaintiff as to any losses subsequently sustained by the Manchester store. It was plaintiff's testimony that he did not wish to execute the document but did so because defendant promised to pay him between "$12,000 and $25,000" upon the resale of the store. Upon resale some $48,000 was paid by defendant to D & P representing property, such as inventory, owned by the corporation at the time of the termination of the licensing agreement. The checks for the $48,000 were endorsed and cashed by Ellis, and plaintiff asserts he received none of the proceeds. Ellis was not a party to this lawsuit.

Defendant addresses three elements of a breach of contract cause of action which it contends plaintiff failed to establish. Those are definiteness and certainty of the terms of the contract, consideration, and legality. We find merit to each of the defendant's contentions but regard it unnecessary to address any except consideration. We further note that it is not at all clear from plaintiff's testimony that the alleged discussion he had with the representative of defendant concerning "$12,000 to $25,000" dealt with money to be given to him personally *vis a vis* that which he would presumably receive as a 50% stockholder in D & P.

 Consideration consists of either a detriment to the promisee or benefit to the promisor. *Gross v. Diehl Specialties International, Inc.*, 776 S.W.2d 879 (Mo.App. 1989) [4–6]. A promise to carry out an already existing contractual duty does not constitute consideration. *Id.* Nor does the carrying out of that preexisting duty constitute consideration. Plaintiff was personally obligated by the licensing agreement to effect a complete and effective transfer of the business following termination of the licensing agreement by the defendant pursuant to the agreement. There is no dispute that two grounds for termination existed—license fees in arrearage and plaintiff's loss of his pharmacist's license. The documents which plaintiff signed were those necessary to "effect a complete and effective transfer of the business". His execution of those documents was simply his carrying out of a duty imposed upon him by the existing licensing agreement, and does not constitute consideration for the alleged promise of the defendant.

Plaintiff asserts that certain handwritten materials added to the typed Termination and Assent at the request of Ellis somehow changed what he had agreed to in the license agreement. We are unable to perceive what legal detriment those handwritten additions imposed upon plaintiff. One waived the anti-competition clause of the licensing agreement as to plaintiff and Ellis. That is a benefit to plaintiff not a detriment. The same is true of the hold harmless provision and the agreement not to disclose the document to the general public. The added statement that the termination was the result of plaintiff's loss of his pharmacist's license was a true statement and imposed no legal detriment on plaintiff.

 The fraud claim was also properly the subject of the directed verdict. Plaintiff was under a legal duty to execute the documents presented to him by defendant. No statements allegedly made to induce that performance were material to the act of executing those documents. The alleged misrepresentation was not therefore material and no cause of action for fraud arose from it.

Judgment affirmed.

KAROHL, C.J., and GARY M. GAERTNER, P.J., concur.