George M. GROSS, Plaintiff/Appellant,

v.

DIEHL SPECIALTIES
INTERNATIONAL, INC.,
Defendant/Respondent.

No. 63299.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 15, 1994.

Alan G. Kimbrell, St. Louis, for plaintiff-appellant.

Stuart R. Berkowitz, St. Louis, for defendant-respondent.

GRIMM, Presiding Judge.

In this court-tried breach of contract case, plaintiff Gross appeals from a judgment in favor of defendant Diehl Specialties. This appeal follows remand from *Gross v. Diehl Spec. Int'l, Inc.,* 776 S.W.2d 879 (Mo.App. E.D.1989). We reverse and remand.

Plaintiff raises five points on appeal. They revolve around the trial court's findings that plaintiff: (1) did not invent certain products, (2) had no ownership interest in those products, and (3) was not entitled to any damages.

## I. Background

The detailed background facts are set forth in *Gross.* Suffice to say, the trial court had found that a 1982 employment contract was the operative contract between the parties. However, we held that there was no consideration for that contract, and that the parties were bound by a 1977 contract. *Id.* at 883–84.

The 1977 contract provided that during its fifteen-year term, plaintiff's "inventions and formulae shall be owned equally by both Company and [plaintiff]." Also, it stated upon its expiration, "ownership of all formulae and inventions shall revert to [plaintiff]."

Further, it provided for payment of royalties to plaintiff "for the use of each of his inventions and formulae used by the Company, whether created ... before or after the date when [plaintiff] commenced work for the Company." During the contract period, plaintiff was to receive "[o]ne percent (1%) of the selling price of all the products produced by Company using ... [plaintiff's] inventions and/or formula." Following the contract period, the royalty increased to "two percent (2%) of the selling price of all such products."

This court's holding in *Gross* required us to reverse and remand. The trial court was directed to hold "further proceedings to determine the formulae for which plaintiff is entitled to royalties from defendant and the amount thereof." *Id.* at 884. On remand, the trial court entered judgment for defendant.

## II. Ownership of Formulae

For his first point, plaintiff alleges the trial court erred in finding "that '[1] plaintiff did not invent Vitamite and Chocomite and does not have any ownership interest in these products' and that [2] he did not 'develop any products or formulaes'...." He contends these conclusions are: (1) against the "law of the case," (2) against the weight of the evidence and erroneously apply the law because defendant judicially admitted these products were plaintiff's formulae, and (3) ignored defendant's admissions that plaintiff developed the formulas for Vitamite and Chocomite.

■ Our review of this case is pursuant to Rule 73.01(c) and governed by the standard of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). Further, "conflicts in evidence are for the trial court to resolve and we take the facts in accordance with the results there reached." *In re Estate of Bollier,* 684 S.W.2d 67, 69 (Mo.App.E.D.1984). However, "[d]eference to the trial court's findings is not required ... where the evidence is not in conflict." *Epperson v. Director of Revenue,* 841 S.W.2d 252, 255 (Mo. App.W.D.1992).

■ The evidence conflicted as to the development of some products. Plaintiff testified that he either developed, or assisted in the development, of eleven products. Those products are Vitamite, Chocomite, Chocomite with Vitamins, Choc–O–Cream, Shake–O–

Mix, E'ze Fre'ze Vanilla, E'ze Fre'ze Chocolate, E'ze Fre'ze Strawberry, Party Nogg, Sunfruit Big Apple and Slush Puppie.

In contrast, defendant presented the testimony of a former research and development employee. He testified that he developed six of those products: Choc-O-Creme, the Sunfruit Brands which includes Big Apple, E'ze Fre'ze vanilla, chocolate, and strawberry, and the Shake-O-Mix Stabilizer. Also, although Employee did not mention Slush Puppie, defendant's president credited Employee with its development. Thus, conflicting evidence exists concerning the development of those seven products. Therefore, we defer to the trial court's determination that plaintiff has no ownership claim in them.

An eighth product was Party Nogg (without whey). While Employee testified that he developed Party Nogg with whey, he did not mention the development of Party Nogg without whey. However, one of defendant's exhibits indicates that there were "no sales since 1984" of Party Nogg without whey. Thus, regardless of who developed it, plaintiff is not entitled to any royalties.

■ Three products remain: Vitamite, Chocomite, and Chocomite with Vitamins. Defendant did not present any evidence refuting plaintiff's claim to their ownership. On the contrary, Employee testified that these products were in existence prior to his employment. Also, defendant's president, when asked about defendant's present formulas, admitted that most of them were plaintiff's "formulae to start with."

Further, defendant's chairman acknowledged that the predecessor corporation was paying plaintiff "one percent on all the company's sales of all their formulas, inventions and blending." Defendant's chairman was then asked:

Q. So [predecessor's president], who is in the best position to know who had developed those formulas and inventions, credited [plaintiff] with their development, did he not, sir?

A. It would appear that way.

■ Consequently, we conclude that the record does not support the trial court's findings that: (1) "Plaintiff did not invent Vitamite and Chocomite and does not have any ownership interest in these products" and (2) he did not "develop any products or formulae." These findings are contrary to the evidence adduced at trial.

In addition, these findings appear to conflict with *Gross*. There, we stated that as to Vitamite, "Plaintiff successfully reformulated the product." *Id.* 776 S.W.2d at 881. Also, we said that plaintiff formulated "a chocolate flavored product ... called Chocolite." * *Id.*

Therefore, based upon the record here, as well as our statements in *Gross*, we conclude that plaintiff originally developed Chocomite and Chocomite with Vitamins, and reformulated Vitamite. Thus, pursuant to the 1977 contract, he may have some claim to royalties on these products.

However, conflicting evidence exists as to the development of the other eight products. We defer to the trial court's determination that these products were developed by other employees. Therefore, the trial court did not err in denying plaintiff royalties on those eight products.

### III. Shop Rights Doctrine

■ For his second point, plaintiff alleges the trial court misapplied the law and erred in finding "that 'Vitamite and Chocomite were developed prior to August 26, 1977 and under the shop rights doctrine belonged to [defendant]." He contends his contract specifically requires royalties for defendant's use of his inventions and formulae, "whether created and/or produced before or after the date when [plaintiff] commenced work for the company."

The Supreme Court in *United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 188, 53 S.Ct. 554, 558, 77 L.Ed. 1114, 1119 (1933), defined a "shop right" as "that, where a servant, during his hours of employment, working with his master's materials and ap-

---

* Choco*l*ite is a typographical error. The record before us in 1989 did not mention choco*l*ite, but it contained numerous references to choco*m*ite.

pliances, conceives and perfects an invention for which he obtains a patent, he must accord his master a nonexclusive right to practice the invention." *See also Corrigan v. Armstrong, Teasdale, Schlafly, Davis & Dicus,* 824 S.W.2d 92, 95 (Mo.App.E.D.1992).

Here, we need not decide whether a "shop right" as defined in *Dubilier* exists. The 1977 contract expressly negates any application of the doctrine. That contract stated, "Company shall pay [plaintiff] a royalty for the use of each of his inventions and formulae used by the Company, whether created and/or produced before or after the date when [plaintiff] commenced work for the Company." Therefore, the trial court's finding that "Vitamite and Chocomite ... under the shop right's doctrine belong[ed] to Company" was erroneous and should be set aside.

## IV. Changes in Formulae

■ For his third point, plaintiff alleges the trial court erred in finding "that 'the Vitamite and Chocomite formulae have undergone numerous changes since October, 1984 when plaintiff was discharged. All of the percentage ingredients are different. Potassium [caseinate] has been substituted for sodium [caseinate]. Canola oil has been substituted for palm oil. Soy protein isolate has been added'."

He contends these findings are not supported by the evidence and misapply the law because: (1) defendant used plaintiff's formulas to create the current formulas; (2) plaintiff developed the stabilizers for Vitamite and Chocomite which are still used; (3) the essential ingredients in Vitamite and Chocomite have not changed, and this is the proper test to see if plaintiff is entitled to royalties; and (4) even if the essential ingredients have changed, plaintiff is entitled to royalties up to the time when the essential ingredients were no longer the same.

Here, the evidence is conflicting. Defendant's chairman stated, "The formulas that [defendant] was using at the time that the business was bought ... [have] all been changed and altered, improved."

Further, defendant's president testified about specific changes that were made to Vitamite, Chocomite and Chocomite with Vitamins. The first change to Vitamite occurred on January 17, 1985. It "involved a change in the stabilizer" to "help dispersion in the dairy" by changing to a "better anticaking agent."

The second change to Vitamite occurred in the first half of 1985. This involved "a complete change in the formula to improve the flavor and mouth feel of Vitamite." Also, this change "was made in connection with a reduction of sodium."

In August, 1985, defendant "made a fairly drastic change [to Vitamite] involving the stabilizer and ... flavors in the stabilizer." It "involved continuing the reduction of sodium." In addition, between August, 1985, and May, 1986, defendant "made a change in protein ... to get a slightly better dispersibility." To achieve this result, defendant substituted potassium caseinate for sodium caseinate.

Further changes to Vitamite were made in May, June, and November of 1986, as well as in January, 1987. Also, changes were made on unspecified dates after October, 1987.

Next, we turn to changes in Chocomite. Defendant's president testified that the "first production batch that was run under the new formula, or the changed formula was November the 19th of 1984." As to specific changes, he stated, "The nature of the first change had to do with improving the ability of the dairy to dissolve and disperse the product."

Also, there were various flavor changes in December of 1984, February, May, and October, 1985, as well as August, 1987. In recent years, a "totally new and different stabilizing system" is being used for Chocomite.

Finally, we look at defendant's evidence concerning Chocomite with Vitamins. Defendant's president stated, the "changes made ... were the same as the ones made to ... regular Chocomite. And they were incorporated at basically the same times and for the same reasons."

In contrast, plaintiff presented the testimony of a food science expert who compared "the formulae for Vitamite as they existed prior to October 9, 1984" to October, 1992.

Expert stated, the formulas "have the same essential ingredients ... [and they] are substantially the same formulae."

Also, he stated that the most recent Chocomite formula "hasn't changed" from the one used prior to October 9, 1984. Further, he said, the most recent Chocomite formula had the same essential ingredients as the formula that was marketed prior to September 10, 1984.

However, on cross-examination, expert admitted that there have been some changes made to the formulations of Vitamite and Chocomite. Also, he said that he did not see, nor was he familiar with the changes that defendant's president testified about. Plaintiff did not present any evidence on the changes to Chocomite with Vitamins.

As is readily apparent, the testimony conflicted concerning the significance of the changes, and whether the formulas remained substantially the same. We defer to the trial court's resolution of conflicting evidence.

■ However, the trial court's finding concerning the timing of these changes is ambiguous at best. The trial court stated that the "formulae have undergone numerous changes *since October, 1984* when plaintiff was discharged." (emphasis added). However, the record indicates: (1) the first change to Vitamite occurred on January 17, 1985; (2) the first production of a new formula of Chocomite occurred on November 19, 1984; and (3) changes to Chocomite with Vitamins occurred at basically the same time as the change to Chocomite.

Defendant discharged plaintiff in October, 1984. Plaintiff is entitled to royalties on the three products from the time he was discharged until defendant changed the formulae to the extent they were no longer plaintiff's formulae.

Therefore, we remand to the trial court for further proceedings. The trial court shall: (1) determine when the formulae for these three products each changed to the extent they were no longer plaintiff's formulae, and (2) award plaintiff royalties on those products pursuant to the contract.

## V. Evidence of Damages and Sales

■ For his fourth point, plaintiff alleges the trial court erred in finding: (1) "plaintiff presented no evidence of damages," and (2) "plaintiff has also failed to present any evidence of sales with respect to any product for which he claims royalties." He contends these findings are not supported by the evidence.

During the 1987 portion of this trial, plaintiff's exhibit 24 was offered and received into evidence. It contained gross sales from September 1, 1984, to May 28, 1987, for Vitamite, Chocomite, and Chocomite with Vitamins, as well as eight other products. This exhibit is some evidence of the damages plaintiff claims. Thus, the trial court should set aside these findings.

■ In his brief, plaintiff points to interrogatory answers in the legal file as additional evidence of sales. However, these interrogatory answers were not offered into evidence. Therefore, they were not before the trial court. *See* Rule 57.01(b) (Interrogatory "answers may be used [at trial] to the extent permitted by the rules of evidence."). As with any other evidence, they must be offered at trial to be considered.

■ Also, plaintiff contends the trial court should have taken judicial notice of the interrogatory answers. However, at trial, plaintiff did not request the court to take judicial notice. We will not convict the trial court of error for failing to take notice of those answers sua sponte.

## VI. Equity and Fairness

■ For his fifth point, plaintiff alleges the trial court erred in finding that "principles of equity and fairness preclude plaintiff from enjoying the fruits of the labor of others in light of his own misconduct, failure to perform under the contract, and lack of candor with the court." He contends, among other things, that this finding erroneously declares and applies the law.

*Gross* remanded with directions. *Gross*, 776 S.W.2d at 884. "Where a remand is with directions, a trial court is bound to render judgment in conformity with the mandate. The trial court is without power to modify,

alter, amend or otherwise depart from the appellate judgment." *Davis v. J.C. Nichols Co.,* 761 S.W.2d 735, 737 (Mo.App.W.D.1988) (citations omitted).

In *Gross,* we stated that "plaintiff became the exclusive owner of the formulae upon termination of the [1977] contract." *Gross,* 776 S.W.2d at 884. We remanded "for further proceedings to determine the formulae for which plaintiff is entitled to royalties from defendant and the amount thereof." *Id.*

The trial court's denial of royalties based upon "principles of equity and fairness" directly conflicts with the mandate. Therefore, this finding must be set aside.

We reverse and remand for further proceedings in accordance with this opinion.

CARL R. GAERTNER and AHRENS, JJ., concur.