# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 8, 2010 Session

## TONYA S. NICHOLSON v. GREGORY M. NICHOLSON

**Direct Appeal from the Chancery Court for Rutherford County**
**No. 09-0009DR      Royce Taylor, Chancellor**

_____

**No. M2010-00042-COA-R3-CV - Filed October 15, 2010**

_____

In this divorce case, Wife/Appellant appeals the trial court's division of marital property and denial of her request for alimony. Finding that the trial court correctly valued the dental practice and properly awarded same to Husband/Appellant, we affirm that portion of the trial court's order. However, because the trial court did not specifically determine whether certain debt was separate or marital debt, and, consequently, did not allocate that debt, we vacate the trial court's division of marital property, and remand for a determination of the nature of the marital debt, and division of same. Because the trial court did not meet the requirements of Tenn. Code Ann. § 36-5-121(i), we vacate the trial court's denial of alimony, and remand for further proceedings concerning Wife/Appellant's need for alimony, and Husband/Appellee's ability to pay same. Affirmed in part; vacated in part, and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court affirmed in part, vacated in part, and remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Nick Shelton, Franklin, Tennessee, for the appellant, Tonya S. Nicholson.

Jon S. Jablonski, Nashville, Tennessee, for the appellee, Gregory M. Nicholson.

## OPINION

### I. Background and Procedural History

At issue in this case is the trial court's division of marital property and denial of alimony following a divorce. Appellant Tonya S. Nicholson ("Wife") and Appellee Dr. Gregory M. Nicholson ("Husband") were married on March 15, 1996. Three children were

born during the thirteen year marriage. Husband, age 44, is a sole-practitioner dentist in Murfreesboro, and Wife, age 37, was a homemaker and employee of Husband's dental practice during the course of their marriage. On January 6, 2009, Husband filed a Complaint for Absolute Divorce in the Chancery Court for Rutherford County.[1] Husband alleged irreconcilable differences and inappropriate marital conduct as grounds for the divorce. Specifically, Husband alleged that Wife was guilty of adultery, abused alcohol, smoked marijuana, and left her marijuana where it was easily discoverable by the parties' children.

Husband requested a *pendente lite* hearing for the purpose of establishing which party would maintain the primary residence for the children, arranging a temporary visitation schedule, and resolving issues such as child support and other financial matters. This *pendente lite* hearing was held before a Special Master on February 11, 2009.

At the hearing, Wife admitted to having extra-marital relationships with several men. She admitted that one of her paramours gave her over $60,000 the previous year, a credit card to use, and a Mercedes-Benz to drive. She further testified that she would sometimes stay out until four o' clock in the morning and come home completely intoxicated. She admitted being arrested for driving under the influence. Moreover, Wife admitted to smoking marijuana at her home and leaving marijuana butts on the patio where the parties' children could find them. Wife testified that she had been employed during the course of the marriage at Husband's dental practice, but asserted that she presently lacked the ability to get another job.

The Special Master's Report, filed February 25, 2009, set forth the Master's findings of fact and conclusions of law. In relevant part, the Master's Report: named Husband the temporary primary residential parent; adopted Husband's parenting plan; ordered Wife to move out of the marital residence within thirty days; ordered Husband to pay Wife's deposit and first month's rent; and ordered Husband to pay Wife $1,500 per month for three months as temporary support. Additionally, the Master found that Wife needed to find a job within 90 days and that the matter would be reevaluated after 90 days with the goal of reducing or eliminating the temporary support.

Wife filed a timely Objection to the Master's Report. In relevant part, Wife stated that she was "without the financial means to secure an appropriate living environment in the brief time mandated by the Special Master," and that, with the "current . . . economic crisis," coupled with her "limited employment history," she should be allowed to continue to reside in the marital residence. Additionally, Wife argued that the Master erred in both the duration

---

[1]Husband had filed for divorce approximately one year earlier alleging grounds of irreconcilable differences, but this filing was voluntarily withdrawn.

and amount of the *pendente lite* alimony as she had need for assistance and Husband had the ability to pay. In his Response, filed March 10, 2009, Husband stated that Wife had "the education and experience to obtain employment and the financial means to live outside of the marital residence." By Order filed March 16, 2009, the Chancellor found Wife's behavior to be "so outrageous" that he ordered her to vacate the marital home immediately. However, the Chancellor also ordered Husband to pay Wife $3,000 towards finding a suitable place to live. The Chancellor otherwise affirmed the Special Master's Report.

On August 31, 2009, Wife filed an Answer and Counter-Complaint, alleging grounds of inappropriate marital conduct. In her counter-complaint, Wife asked the court for possession of the marital residence, an equitable division of marital property, and alimony in futuro, in solido, or rehabilitative.

During the two day bench trial, the court heard extensive testimony regarding Wife's infidelity and substance abuse. Much of the testimony mirrored that adduced at the *pendente lite* hearing. Again, Wife admitted to extramarital relationships, drug use, alcohol abuse, late night partying, and multiple arrests for driving under the influence. After learning of her marital misconduct, Husband testified that he "finally realized that I didn't know who this person was anymore."

The court also heard testimony regarding Wife's past education and employment history. Prior to the parties' marriage in 1996, Wife worked as a dental assistant. Early in the parties' marriage, Wife worked for a few months at a mental institution and for a few months as a chiropractic assistant. Husband testified that, throughout their marriage, he had employed Wife at his dental practice and had paid her between $12,000-16,000 per year. Wife's duties at the dental practice were largely related to marketing and public relations, such as handing out business cards and promoting Husband's practice in the community. During the parties' marriage, Wife served on boards and committees for several community and charitable organizations. Following the *pendente lite* hearing, Wife acquired her real estate license and, at the time of the hearing, was employed as a commercial real estate agent. At the time of the hearing, Wife had not yet earned any significant commissions. Wife further testified that she hoped to attend Middle Tennessee State University to acquire a bachelor's degree. Wife testified that her mother, who was supporting her financially, had temporarily moved from Virginia and had been living with Wife in an apartment next to the marital residence.

The court heard testimony regarding Husband's dental practice. In 2000, when Husband started the practice, his earnings for the year were $15,000. However, by 2008 (according to the parties' proposed tax return), Husband's earnings had increased to $144,000. Husband testified that in 2001 his parents loaned him approximately $100,000 to

start his business and purchase dental equipment. Husband's father, Mike Nicholson, affirmed the existence of this loan and indicated that, while Husband had not made any payments on the loan to date, that he had not forgiven the loan and expected Husband to pay him back.

Each party had accumulated credit card debt. Husband had approximately $33,000 on a credit card in his name only and approximately $12,000 on a credit card in his business' name. He testified that the charges on both cards were incurred during the marriage for business and household purposes. Wife had approximately $28,000 in debt spread over six credit cards, each held in her name only, which debt she testified had been incurred during the marriage for household purposes.

The parties' marital residence had a first mortgage of approximately $317,406 and a second mortgage of $18,659. The parties bought the house for $385,000 in December, 2007. Husband did not believe that the house would sell for more than the debt owed. He testified that they had bought "at the end of . . . the bubble when it was high, and since then its not so good anymore." The parties had also purchased two condominiums, which they had renovated and sold during the pendency of the divorce. The proceeds from the sale of the condominiums were held in their attorneys' escrow accounts.

By Final Decree of Divorce, dated November 23, 2009, the trial court awarded Husband a divorce on the grounds of inappropriate marital conduct and dismissed Wife's counterclaim for divorce. The court named Husband the primary residential parent due to Wife's outrageous conduct and adopted Husband's parenting plan. The court found that Wife's conduct was not "just one or two bad choices or lapses" but was "a continuing pattern that ran from the middle of 2004 through 2008 . . . . She was not only convicted of Driving under the Influence due to her abuse of alcohol, she was involved with marijuana, leaving it in plain sight and accessible to the children, she stayed out late at night and some nights not even coming home. . . . The Court finds that the [Wife] basically abandoned the family unit." The court dismissed Wife's claim for alimony, stating that "rather than finding employment, [she] lived as a party girl. And the Court uses that term charitably because it believes it is much worse than just party girl."

The trial court then divided the marital estate. The court awarded Husband the marital residence after determining that there was no equity in it and Wife was not capable of making the mortgage payments. The court evenly divided the parties' personal property, retirement accounts, and vehicles. The court awarded Husband his dental practice, finding that it had little value due to his being a sole practitioner, and that any value it did have, such as for equipment, was offset by the $100,000 loan Husband owed to his parents. The court ordered that the proceeds from the sale of the parties' condominiums be applied first to an

outstanding mortgage owed for the renovation of the condos, then to $30,000 in credit card debt held in Husband's name only, which debt the court found to be marital. Any remaining funds from the sale of the condominiums were to be split equally between the parties.

Wife appeals the trial court's ruling, and raises three issues on appeal, as restated from her brief:

(1) Whether the trial court failed to equitably divide the parties' marital property when it awarded Husband his entire dental practice;
(2) Whether the trial court failed to equitably divide the parties' marital property when it allowed credit card debt held in Husband's name only to be paid off with proceeds from the sale of the parties' condominiums; and
(3) Whether the trial court erred when it did not award alimony to Wife?

## II. Standard of Review

Because this case was tried by the court, sitting without a jury, we review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). If the evidence does not preponderate against the court's findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de novo*. **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000).

For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. **Walker v. Sidney Gilreath & Assocs.**, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); **The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.**, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." **Brooks v. Brooks**, 992 S.W.2d 403, 405 (Tenn. 1999). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trier of fact, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *See* **McCaleb v. Saturn Corp**., 910 S.W.2d 412, 415 (Tenn. 1995); **Whitaker v. Whitaker**, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See* *id*.; **In re Estate of Walton v. Young**, 950 S.W.2d 956, 959 (Tenn. 1997). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." **Heffington v. Heffington**, No. M2009-00434-COA-R3-CV, 2010

WL 623629 (Tenn. Ct. App. Feb. 19, 2010).

## III. Division of Marital Property

The division of marital property, including its classification and valuation are findings of fact. **Woodword v. Woodword**, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007). Trial courts have "wide latitude in fashioning an equitable division of marital property." **Altman v. Altman**, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005). Accordingly, the trial court's decisions regarding classification, valuation and division of property are reviewed *de novo* with a presumption of correctness unless the evidence preponderates otherwise. **Farrar v. Farrar**, 553 S.W.2d 741, 743 (Tenn. 1977).

When making its division of property, the trial court must first classify the property. Tennessee recognizes two distinct types or classes of property: "marital property" and "separate property." The distinction is important because Tenn. Code Ann § 36-4-121(a) "provides only for the division of marital property." *See also* **Batson v. Batson**, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Dividing a marital estate is not a mechanical process; the goal is to fashion an equitable remedy considering the non-exclusive factors set forth in Tenn. Code. Ann § 36-4-121(c).[2] The division of marital property is rooted in equity, and a division of marital property is not rendered inequitable merely because it is not precisely equal, **Cohen v. Cohen**, 937 S.W.2d 823, 832 (Tenn. 1996); **Ellis v. Ellis**, 748 S.W.2d 424,

---

[2]These statutory factors are:

1. The duration of the marriage;
2. The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
3. The tangible or intangible contributions by one party to the education, training or increased earning power of the other party;
4. The relative ability of each party for future acquisition of capital assets and income;
5. The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his role;
6. The value of the separate property of each party;
7. The estate of each party at the time of the marriage;
8. The economic circumstances of each party at the time of the marriage;
9. The tax consequences to each party associated with the reasonably foreseeable sale of the asset and other reasonably foreseeable expenses associated with the asset;
10. The amount of social security benefits available to each spouse;
11. And such other factors as are necessary to consider the equities between the parties.

427 (Tenn. 1988), or because each party does not receive a share or portion of each marital asset. *Cohen*, 937 S.W.2d at 833 (citing *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994)).

Wife argues that the trial court failed to equitably divide the marital estate when it (1) awarded Husband his entire dental practice; and (2) paid credit card debt held in Husband's name only with proceeds from the sale of marital property.

A. *Dental Practice*

"The valuation of a marital asset is a question of fact. It is determined by considering all relevant evidence, and each party bears the burden of bringing forth competent evidence." *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998) (citing *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987)). "If the evidence of value is conflicting, the trial judge may assign a value that is within the range of values supported by the evidence." *Kinard*, 986 S.W.2d at 231 (citing *Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995); *Wallace*, 733 S.W.2d at 107)). "On appeal, we presume the trial judge's factual determinations are correct unless the evidence preponderates against them." *Kinard*, 986 S.W.2d at 231 (citing *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996)).

In Tennessee, a professional practice, such as a dental practice, may be considered a marital asset. *See Argo v. Argo*, 1985 WL 673374 (Tenn. Ct. App. April 11, 1985). The court here concluded that Husband's sole practitioner dental practice was a marital asset. Proper valuation of this marital asset, however, includes only the value of the practice's tangible assets and does not include the practice's future earnings or professional goodwill. *See Argo*, 1985 WL 673374, at *4-5; *Smith v. Smith*, 709 S.W.2d 588, 592 (Tenn. Ct. App. 1985). In *Argo*, this Court first answered the question of whether a sole practitioner dentist's future earnings were a relevant consideration when dividing the marital estate. In holding that a sole practitioner dentists's earnings were not subject to division of marital property, we stated:

> The future value of a professional practice depends upon many factors that are speculative. Husband might choose not to practice any longer, or he might even fail at his practice. His dental practice, or his right to practice, is personal to him. It is not transferable in the open market, it will terminate at his death; it is not inheritable, nor can it be assigned, sold, transferred, or pledged. It has none of the usual attributes of property. Furthermore, unlike an award of alimony . . . which can be adjusted after the divorce so as to reflect unanticipated changes

-7-

in the parties' circumstances, a division of property under the
statute may not be adjusted in the future.

*Argo v. Argo*, 1985 WL 673374, at *5.

Likewise, "professional goodwill is not a marital asset to be considered in making an equitable distribution of the marital estate." **Cunningham v. Cunningham**, No. W1999-02054-COA-R3-CV, 2000 WL 33191364, at *3 (Tenn. Ct. App. Oct. 20, 2000) (citing **Smith v. Smith**, 709 S.W.2d 588, 592 (Tenn. Ct. App. 1985)). In a sole practitioner dental practice, the success of the business is dependent on the skill and reputation of the dentist. As stated in **Cunningham**:

> [T]he goodwill of a business, although essentially a thing of value, does not have a property interest separate from the business itself. Goodwill is, in essence, the reputation of the professional practice. The reputation of the practice, hence its goodwill, is valuable to the owner of the practice, and it cannot be separately sold or pledged.

**Cunningham**, 2000 WL 33191364, at *3.

Rather than measuring its value by goodwill or potential future earnings, the correct method for valuing a sole practitioner dental practice is the value of its tangible assets such as cash on hand, accounts receivable, and equipment, less any encumbrances on these assets. *See Argo*, 1985 WL 673374, at *5; **Cunningham**, 2000 WL 33191364, at *3.

In the instant case, the court heard little evidence regarding the value of the assets of the dental practice, and there was no expert testimony concerning the value of the practice. As noted above, Husband testified that his parents had loaned him approximately $100,000 as start-up money to purchase equipment for the practice in 2001. Husband's father testified that he had not forgiven the loan and expects to be paid back by his son. Wife's only evidence was a 2007 personal financial statement submitted by both parties for a bank loan on which the words "Dental Practice (Appraised 2004) – $197,000" were handwritten. When cross-examining Husband regarding this financial statement, Wife's counsel only questioned Husband regarding the omission of the $100,000 loan from Husband's parents, but did not elicit testimony regarding this alleged value.

After weighing the evidence, the court found the practice to have "little value." Specifically, the court stated that, "due to the [Husband] being a sole practitioner and [the fact] that he borrowed $100,000 from his parents[,] [i]t would appear . . . that the

-8-

indebtedness owed to his parents was for equipment and it would appear whatever value he has in his dental practice is minimal due to the debt." Based upon this finding, the trial court awarded Husband the dental practice and held him responsible for the debt owed to his parents.

On appeal, Wife asserts that the court improperly valued the dental practice. We disagree. The court properly disregarded the future earning capacity and professional goodwill of Husband's sole practitioner dental practice and focused instead on its tangible assets and associated debt. *See Argo*, 1985 WL 673374, at *5; *Cunningham*, 2000 WL 33191364, at *3. Unfortunately, as discussed above, the parties submitted little credible evidence as to the value of the tangible assets. It is the responsibility of the parties, not the court, to propose values to marital property. *Caldwell v. Caldwell*, No. M2007-01205-COA-R3-CV, 2008 WL 4613586, at *2 (Tenn. Ct. App. March 5, 2008) (citing *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987)). The parties are bound by the evidence they present, and the trial court, in its discretion, is free to place a value on a marital asset that is within the range of evidence submitted. *Wallace*, 733 S.W.2d at 107. The trial court apparently selected a value within the permissible range, $100,000, and offset that value by the debt owed. We find no fault with the trial court valuing the dental practice in this manner.

Wife, however, argues that the $100,000 loan to Husband from his parents was not a loan at all, but, rather, a gift. Specifically, Wife notes the fact that no documentation exists evidencing the loan, and the fact that no payments were ever made. The court apparently found Husband and his father's testimonies concerning the nature of the $100,000 as a "loan" to be credible. The evidence in the record does not preponderate against the trial court's determination that the $100,000 represented a loan. Consequently, we affirm the trial court's valuation of the dental practice and its award to Husband.

### B. *Credit Card Debt*

With respect to the parties' credit card debt, each party testified to credit card debt held individually and allegedly accrued during the marriage. Husband had approximately $33,000 in credit card debt in his name only and approximately $12,455 on a credit card in his business' name. He testified that the charges on both cards were incurred during the marriage for business and household purposes. Wife testified to approximately $28,000 in debt on six credit cards, held in her name only, which debt she testified was incurred during the marriage for household purposes.

Concerning marital debt, in its Final Decree of Divorce, the trial court stated:

The Court finds the $16,000 owed on the renovation of the business condominiums was a marital debt, which needs to be paid, along with the $30,000 credit card debt, which was incurred during the marriage. If more is owed on said credit card it shall be paid by [Husband]. The Court finds that the two indebtedness shall be paid by the monies in the attorney's escrow accounts. Any remaining monies shall be equally split between the parties.

Wife maintains on appeal that the trial court erred by paying off credit card debt held in Husband's name with marital assets and in not doing likewise for debt held in Wife's name.

Our Supreme Court has stated that "marital debts are subject to equitable division in the same manner as marital property." *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). Marital debts should be distinguished from separate debts. To that end, the *Alford* Court stated that "marital debts are all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing." *Id.* After determining whether certain debt is marital debt, a trial court should next allocate the marital debt between the spouses by evaluating the following factors: "(1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt." *Id.* at 814 (citing *Mondelli v. Howard*, 780 S.W.2d 769 (Tenn. Ct. App. 1989)).

From our review of the trial court's Final Decree, as well as its statements from the bench, it appears that the court found only the $30,000 debt on Husband's credit card to be marital debt.[3] However, the trial court failed to rule on whether the credit card in Husband's business' name (with a balance of $12,455) or the credit cards in Wife's name (with approximate total balances of $28,000) were separate or marital debt. Presumably these were all marital debts as the uncontradicted testimony of each spouse was that the debts were incurred by the parties during the course of the marriage. *See Alford*, 120 S.W.3d at 813. However, it is not the purview of this Court to make that finding. Consequently, we remand for the trial court to categorize these debts as either marital or separate. If, on remand, the trial court finds that these are marital debts, then the trial court is required to specifically allocate the debts between the spouses by applying the factors listed above. *See id.* at 814. Consequently, we vacate this portion of the trial court's decision and remand for a specific determination of all marital debts and a specific allocation of all marital debts after weighing

---

[3]The trial court also found a $16,057.84 second mortgage on the parties' condominiums to be marital debt. That debt is not at issue here.

-10-

the relevant factors.

## IV.  <u>Alimony</u>

The "propriety of awarding alimony as well as the adequacy of the amount awarded depends upon the unique facts of each case." *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997).  "The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable.  Thus, this Court reviews the  award, or denial, of alimony under an abuse of discretion standard." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006) (citation omitted).  The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives.  *See BIF v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988).  While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative. *State Ex Rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

Tenn. Code Ann. § 36-5-121(i) lists the relevant factors for a court to consider when deciding whether the payment of alimony is appropriate.[4]  Of the factors listed in section 36-

---

[4] These statutory factors are :

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
> (9) The standard of living of the parties established during the marriage;
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other
> (continued...)

-11-

5-121(i), the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Fickle v. Fickle*, 287 S.W.3d 723, 736 (Tenn. Ct. App. 2008) (citing *Robertson v. Robertson*, 76 S.W.3d 723 (Tenn. Ct. App. 2008)). Of these two factors, the disadvantaged spouse's need is the threshold consideration. *Fickle*, 287 S.W.3d at 736 (citing *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995)). In her counter complaint for divorce wife, requested an award of rehabilitative alimony, in futuro alimony or in solido alimony.

The trial court denied Wife's request for alimony and stated the following in its Final Decree of Divorce:

> With regards to alimony, [Wife] lived way beyond her means by obtaining large chunks of money from other men as well as using another man's credit card. [Wife], rather than finding employment lived as a party girl and the Court uses that term charitably because it believes it is much worse than just party girl. Therefore, the Court is hereby dismissing [Wife's] claim for alimony.

The trial court did not recite the factors it considered in denying alimony.[5] Of the statutory factors listed in Tenn. Code Ann. § 36-5-121(i), it appears that the trial court was referring to the marital fault of Wife in its order denying alimony. Fault is an essential consideration in determining whether to award alimony. Tenn. Code Ann. § 36-5-121(i)(11); *Hoscheit v. Hoscheit*, 1998 WL 440727, *3 (Tenn. Ct. App. Aug. 5, 1998) (citing *Gilliam v. Gilliam*, 776 S.W.2d 81 (Tenn. Ct. App. 1988)). However, fault is not the only relevant factor warranting consideration. Particularly, a trial court should carefully consider the two

---

[4](...continued)
party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

[5] A trial court is not required to specifically recite the factors it considered in determining its alimony award and, when a trial court has failed to do so, "an appellate court 'must conduct its own independent review of the record to determine where the preponderance of the evidence lies.'" *Broadbent v. Broadbent*, 211 S.W.3d 216, 221-22 (Tenn. Ct. App. 2006) (quoting *Crabtree v. Crabtree* 16 S.W. 3d 356, 360 (Tenn. 2000)). Because we are unable to determine the disadvantaged spouse's need and the obligor spouse's ability to pay in light of this Court's decision to remand for a determination and allocation of nearly $40,000 of the parties' debt, we choose to vacate and remand on the issue of alimony, pending the trial court's determination of the issues concerning the marital debt.

most important factors, the disadvantaged spouse's need and the obligor spouse's ability to pay. These two factors cannot be overlooked. Furthermore, fault must not be applied punitively against a guilty party. *Tait v. Tait*, 207 S.W.3d 270, 278 (Tenn. Ct. App. 2006) (citing *Gilliam v. Gilliam*, 776 S.W.2d 881 (Tenn. Ct. App. 1988)).

In this case, Wife has no college degree and has limited work experience outside of Husband's dental practice. While Wife recently acquired her real estate license and a job, as of the time of the hearing she had yet to earn any significant income from commissions. On the other hand, Husband is a cosmetic dentist who earned over $140,000 each of the last two years. Based on the record, there appears to be a significant disparity between the parties' current and potential incomes.

The court's decision not to award alimony is not an impermissible result; however, we are unable to discern from the record the court's analysis of the statutory factors, particularly the paramount considerations of the disadvantaged spouse's need and the obligor spouse's ability to pay. Furthermore, because we remand for a specific determination and allocation of approximately $40,000 in debt, the trial court should consider its effect on the respective spouse's need and ability to pay. Consequently, we vacate the trial court's decision to deny alimony and remand for an analysis of the factors set forth in Tenn. Code Ann. § 36-5-121(i).

## V. Conclusion

For the foregoing reasons, we affirm the trial court's valuation and award of the dental practice to Husband. However, because the trial court did not specifically determine whether certain debt was separate or marital debt, and, consequently, did not allocate that debt, we vacate the trial court's division of marital property and debt, and remand for a determination of the nature of the marital debt and division of same. We also vacate the trial court's denial of alimony, and remand for further proceedings concerning Wife/Appellant's need for alimony, and Husband/Appellee's ability to pay same. Costs of this appeal are assessed one-half to Appellant, Tonya S. Nicholson, and her surety, and one-half to the Appellee, Gregory M. Nicholson, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

-13-